IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**EDWARD EUGENE WOODALL, III**     **PLAINTIFF**

**V.**     **CIVIL ACTION NO.4:23-CV-146-DAS**

**COMMISSIONER OF SOCIAL SECURITY**     **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits and supplemental security income. The parties have consented to entry of a final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be reversed and remanded.

## FACTS

The plaintiff, Edward Woodall, III, filed for benefits on April 26, 2021, alleging onset of disability on September 1, 2020. The Social Security Administration denied the claim initially and on reconsideration. His insured status does not expire until the end of June 2024. Following

the hearing, the ALJ issued an unfavorable decision on April 4, 2023. (Dkt. 7 p. 19-29).[1]  The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ found Woodall had the following severe impairments: epilepsy, schizophrenia, bipolar disorder, and panic disorder.  The ALJ found his ADHD and substance abuse problems were non-severe.  The ALJ found Woodall had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but had multiple nonexertional limitations.  The claimant can never climb ladders, ropes, or scaffolds.  He can frequently balance, stoop, kneel, crouch, and crawl.  He must avoid even moderate exposure to unprotected heights and hazardous moving machinery and must avoid exposure to bodies of water that pose a risk of drowning.  He must avoid commercial driving.  The claimant can perform routine, repetitive tasks, can understand, remember, and carry out short, simple instructions and is able to sustain concentration, persistence, and pace for two-hour blocks of time.  He can make simple work-related decisions.  He can occasionally interact with supervisors but only infrequently or incidentally interact with coworkers.  He can never interact with the general public.  He can adapt to occasional and gradually introduced changes in the workplace.  He cannot manage money.  He cannot work at a specific piece or production rate pace.  He may be off task up to ten percent of the workday.

The ALJ found Woodall cannot perform any of his past relevant work as hand sander, stock clerk, and material handler.  The claimant was thirty-four years old on the alleged date of onset and is a younger individual.  He has a limited education.  Based on the testimony of the vocational expert, the ALJ found Woodall could do other jobs that exist in substantial numbers in

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

the national economy, namely, laundry worker (DOT #361.685-018) which is unskilled work performed at a light exertional level with 10,000 jobs in the national economy; marker (DOT #209.587-034), which is unskilled work performed at a light exertional level with 47,000 jobs in the national economy; and dining room attendant (DOT #311.677-018), which is unskilled work performed at a light exertional level with 60,000 jobs in the national economy.

## ANALYSIS

In his appeal the plaintiff raises two issues. He challenges the ALJ's assessment of the persuasiveness of the medical opinions of Michael Whelan, Ph.D., a consulting examiner, and Jalisha Kee, CMHT MSN, a treating source. He also argues the ALJ erred in failing to explicitly address Woodall's capacity to sustain employment on a long-term basis in accordance with *Singletary v Bowen*, 798 F. 2d 818 (5th Cir. 1986). The court addresses only the evaluation of the opinion of Dr. Michael Whelan because this issue is dispositive of the appeal.

## APPLICABLE LAW

The Social Security regulations require ALJs to determine the persuasiveness of experts' opinions based on five factors: 1) supportability; 2) consistency; 3) the source's relationship with the patient, 4) the source's medical specialty; and 5) a catchall provision for "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(b)(2). The regulations, however, only require the ALJs to discuss the supportability and consistency of the expert opinions in their decisions. *Id.*

The supportability of a medical opinion "increases as the relevance of the objective medical evidence and explanations presented by the medical source increases." *Vellone v. Saul,*

3

No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). The consistency evaluation is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Clay v. Kijakazi*, No. 4:21-CV-149-SA-DAS, 2022 WL 13989015, at *3 (N.D. Miss. Oct. 21, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1) Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844, 5853, 82 FR 5844-01, 5853).

This court must first determine if an adequate explanation of the persuasiveness findings has been given, and, if not, determine if the error is prejudicial to the plaintiff or harmless error.

It is critical that ALJs provide enough information in their decisions to enable the courts to conduct a meaningful appellate review of the decision-making process. *See Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) ("[T]he ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.") (quoting *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir. 1986)). The courts need to know what evidence was considered and why a particular result was reached in the decision-making process. The ALJ may not simply to pay lip service to the regulatory requirements without providing any meaningful detail. *See, e.g.*, *Howard D. v. Saul,* 2021 WL 1152834, at *12 (N.D.N.Y. Mar. 26, 2021). A decision does not make an adequate explanation of the persuasiveness findings if the federal courts on appeal are left to speculate about the judge's reasoning or to engage in in post hoc rationalization to explain the decision. *Id.*

The duty of the Social Security Administration to explain its decisions is mandated by regulation and by statute. In every decision, unless fully favorable, the Social Security Administration must provide a "statement of the case, in understandable language, setting forth a

4

discussion of the evidence, and *stating the Commissioner's determination and the reason or reasons*." 42 U.S.C. § 405 (b)(1) (emphasis added).

The ALJs are not required "to comment on every piece of evidence, but [are] only required to build an accurate and logical bridge between the evidence and the final determination. *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (citing *Glomski v. Massanari,* 172 F. Supp. 2d 1079, 1082, 77 (E.D. Wis. 2001)). The measuring stick for an "adequate discussion" is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding about the medical opinion was supported by substantial evidence. S*ee Ramirez v. Saul*, No. SA-20-CV-00457-ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021).

Case law has accumulated in the last several years that provides substantial guidance on how much explanation is sufficient. In *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted,* No. 1:20-CV-166-HSO-RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021), the court noted the level of specificity is context driven, but held the ALJ's recitation of the facts without providing any insight into his reasoning for a persuasiveness finding was not sufficient. In *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021), the court found the "terse reasoning" for rejecting a treating doctor's opinion was not enough because it did not cite any record evidence contradicting the opinion, and the ALJ just assumed, without any proof, that opinions was favorable because of physician sympathy. In *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489 (S.D. Miss. 2021), the ALJ erred in rejecting a treating provider's favorable citing to normal exam findings on conditions irrelevant to the

5

causes of Cooley's alleged disability and disregarding multiple abnormal findings pertinent to the asserted cause of disability, providing an example of a factually accurate explanation that failed to logically connect the evidence to the ALJ's decision.

In assessing whether an ALJ has provided an adequate analysis, the court must look to the opinion as a whole, not simply the portion directly addressing a particular opinion. Other parts of the opinion may add to the ALJ's explanation. *Hubbard v. Comm'r of Soc. Sec.*, 2022 WL 196297 (N.D. Tex. January 21, 2022) (The ALJ's explanation for finding SAMC's opinions persuasive also provided some explanation for rejecting other experts' opinions.).

Certainly every error in an ALJ's exposition is not harmful. The existence of medical evidence that could support the ALJ's decision will not necessarily render the error harmless, but if the medical opinions at issue are neither peripheral to the issue of disability, nor merely cumulative, the error is not harmless. See *Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at *2–3 (S.D. Miss. Feb. 26, 2021) (The ALJ adequately explained why he found Moore did not need a cane, but provided no explanation for rejecting the treating physician's lifting limits, which contradicted the light work RFC assessed by the ALJ.).

## **EVALUATION OF WHELAN OPINION**

The ALJ found the opinion of Dr. Whelan only partially persuasive. He offered the following recap of Whelan's report:

> In August of 2021, William Whelan, PhD, completed a consultative examination with the claimant. The claimant reported that he experienced panic attacks and had difficulty being around crowds. Additionally, he reported mood swings and difficulty sleeping. On examination, Dr. Whelan noted that the claimant made paranoid statements, but was logical and goal oriented in his thoughts and expressed them coherently. He also assessed a low IQ score; however, he

6

attributed this to poor attention and concentration, as well as impulsivity and long-time cannabis use.[2]

Dr. Whelan assessed that the claimant could follow simple directions, but that he would have difficulty sustain[ing] coopera[tive] work activities with others. He also assessed that the claimant should not manage money. He assessed that the claimant had bipolar disorder, a panic disorder, and possibly a personality disorder instead of schizophrenia. (Exhibit 5F). The undersigned considered Dr. Whelan's statements under the rules of 20 CFR 404.1520c and 416.920c. The undersigned considered the medical source's relationship with the claimant, supportability, consistency, specialization and other factors. (R. 22).

The ALJ then explained his persuasiveness finding as follows: *Dr. Whelan's objective observations are generally consistent with the evidence from other medical and nonmedical sources; however, his medical opinion regarding his ability to interact with others is not entirely supported by his personal examination of the claimant, which does not indicate such significant limitations in interacting. Consequently, Dr. Whelan's medical opinion is only partially persuasive, to the extent it is consistent with and supported by the preponderance of the objective medical evidence.* [emphasis added]. (R 22).

---

[2] Though not argued on appeal, nor the cause of remand, this statement is, in part erroneous, and the error could be significant on remand. Whelan's report highlights a very dramatic drop in Woodall's IQ in the testing done at his examination. Older tests placed the plaintiff's IQ in the low average range and the new testing dropped his IQ into the mild range of intellectual disability. Whelan was convinced Woodall was not malingering. Woodall was exhibiting poor concentration and attention, and was impulsive in testing. He worked "very slowly" on the test and made multiple errors in the Matrix Reasoning portion of the test. Whelan noted "deterioration of intellectual functioning from the seizure disorder is, of course, possible, but I don't think symptoms of ADHD could account for such a marked decline in intellectual functioning." R. 366. Because lack of focus and concentration are hallmark symptoms of ADHD, Whelan was eliminating poor concentration as enough to explain the disparity in the scores. Nor did Whelan, in any way, attribute the IQ drop to cannabis use. Rather, Whelan concluded "Once again, I am rather at a loss to describe previous IQ scores in the low average range and today's IQ scores in the mild range of intellectual disability, but a neurocognitive disorder certainly should be entertained." R. 367. The doctor connected the cannabis and low IQ scores only as a combination of impairments to explain why he recommended that Woodall not handle his own money. Because claimants are disqualified from receiving benefits if their disability is caused by a substance abuse disorder, it is important that Woodall's impairments in intellectual functioning not be erroneously attributed to his cannabis use. SSA may need to further investigate the question of whether the claimant may have developed a neurocognitive disorder.

7

The court finds the ALJ failed to explain this persuasiveness finding.  The first part of the explanation appears to be boilerplate.  Virtually identical phrasing is found for both Whelan's opinion and Kee's opinions—that  their opinions are generally consistent with other medical and non-medical evidence.  In both explanations, the ALJ then proceeded to find the opinions were undermined as unsupported by the doctors' personal evaluations/examinations.

In considering Whelan's opinions, the ALJ offers only a conclusory explanation for this supposed underlying flaw in his opinions—"[H]is medical opinion regarding his ability to interact with others is not entirely supported by his personal examination of the claimant, which does not indicate such significant limitations in interacting."  This statement sheds no light on the ALJ's rationale for rejecting the Whalen's restrictions.  Whelan's report details his observations, findings, testing and the pertinent history that supports his  opinions, but the ALJ offers no reference to any of the record evidence or opinions that undermines or contradicts Whelan.

Whelan's report expressly noted Woodall's "paranoid personality traits, in combination the mood swings, the mood swings coming from his bipolar disorder," would "render it very difficult for him to sustain cooperative work activities with others."  R. 367. Support for this opinion is woven into the doctor's findings through his report.

Whelan noted his work history, including Woodall walking off the last two jobs and talking to himself.  Woodall's history of minor but repeated scrapes with the law is indicative of behavior problems that would impact his capacity to ability to get along with others at work. Whelan notes Woodall's paranoid statements about law enforcement were "the first of many paranoid statements that he makes." R. 364.  Whelan noted the past history of severe mental illness borne out by extensive records, going back to his teenage years and including extensive

8

treatment and diagnoses including oppositional defiant disorder, threats of violence and violent behavior and emerging traits of a personality disorder. R.364.

Whelan found Woodall genuinely described panic attacks which resulted in shortness of breath and increased irritability. Whelan noted Woodall talked to himself a lot of the time. He described the claimant as paranoid with some delusional thinking. Woodall said when he talked to himself, he would talk about people trying to steal his gas, or trying to figure out what they were saying about him. His mood during the examination was extremely anxious.

Whelan found Woodall had bipolar disorder and experienced mood swings ranging from mania and anxiety to depression, all tinged by his paranoia. Whelan stated "Paranoid personality features are noted and are prominent because they manifest some systematized delusional thinking. His bipolar disorder, type 1, probably exacerbates his paranoid thinking from time to time." R. 367.

Whelan scrupulously supported his opinion with his professional findings and evaluation and a thorough consideration of the Woodall's history. Without reference to anything in the record to undermine Whelan's conclusion, the court finds the ALJ erred in failing to explain his persuasiveness findings.

The court also finds the error was not harmless. The ability to interact with others is critical to the determination of whether Woodall is disabled by his mental impairments. Whelan's opinion that it would be very difficult for Woodall to interact appropriately and cooperatively is likely case determinative. Whelan's limitation was not incorporated into the RFC and, if accepted, virtually assures an award of benefits, meaning that the unexplained rejection of this opinion was prejudicial and requires remand.

## **CONCLUSION**

Finding the ALJ erred in failing to explain his rejection of Dr. Whelan's well-supported restrictions on Woodall's ability to work with others based on his mental illnesses, the court finds the decision of the Commissioner must be remanded.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is reversed and this case remanded for further proceedings consistent with this opinion.

**SO ORDERED AND ADJUDGED** this the 18th day of June, 2024.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**